IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUMMIT AGRO USA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| FMC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Summit Agro USA, LLC ("Summit") brings this complaint for declaratory judgment against Defendant FMC Corporation ("FMC") and alleges as follows:

## **Nature of the Action**

1.      This is an action for a declaratory judgment that Summit does not infringe any claim of U.S. Patent No. 7,169,952 (the "'952 Patent") and that the claims of the '952 Patent are invalid. A true and correct copy of the '952 Patent is attached as Exhibit A.

## **The Parties**

2.      Summit is a limited liability company organized under the laws of Delaware, with a corporate office at 8000 Regency Park, Suite 265, Cary, North Carolina 27518.

3.      FMC is a corporation organized under the laws of Delaware, with its principal place of business at 1735 Market Street, Philadelphia, Pennsylvania 19103.

## **Jurisdiction and Venue**

4.      This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a).

6.      The Court has personal jurisdiction over FMC at least by virtue of its

incorporation in Delaware.

7.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391 (b) and

(c) and 1400(b) because (1) FMC resides in this district, and (2) a substantial part of the events

giving rise to the claim occurred in this district, including FMC's earlier litigation against

Summit for allegedly infringing the claims of the '952 Patent. C.A. No. 14-051-LPS-CJB

("Original Action").

**FMC's Aggressive Patent Enforcement Efforts Have Created an Actual,
Immediate Controversy That Warrants the Issuance of Declaratory Relief.**

8.      FMC sued Summit and a related entity, Summit Agro North America Holding

Corporation ("Summit Holding"), in this Court on January 16, 2014. Original Action, D.I. 1.

9.      In its complaint, FMC alleged that it was "the assignee and lawful owner of all

right, title and interest in and to the '952 Patent." *Id.*, ¶11.

10.     The '952 Patent relates to a method of manufacturing the herbicidal active

ingredient sulfentrazone. *Id.*, ¶¶9, 12.

11.     Summit imports sulfentrazone from China, which it then formulates and packages

as an end-use product called "Blanket 4F" for a third-party distributor, Tenkoz Inc.

12.     In addition to bringing several state-law claims (which have since been dismissed

with prejudice (Original Action, D.I. 116)), FMC alleged that the process used to manufacture

sulfentrazone by Summit's Chinese supplier "infringes one or more claims of the '952 Patent,

including claim 18, either literally or under the doctrine of equivalents." Original Action, D.I. 1,

¶34.

13.     FMC further alleged that Summit "ha[s] been directly and/or indirectly infringing one or more claims of the '952 Patent by making, using, selling, or offering to sell within the United States, and/or importing into the United States sulfentrazone and one or more sulfentrazone-containing products manufactured using a process covered either literally or under the doctrine of equivalents by one or more claims of the '952 Patent." *Id.*, ¶35.

14.     FMC further alleged that Summit "ha[s] been infringing one or more of the claims of the '952 Patent by actively inducing others, including its foreign manufacturer, to sell into the United States sulfentrazone made by methods or processes covered by one or more claims of the '952 Patent, knowing that those methods and processes are covered by one or more claims of the '952 Patent." *Id.*, ¶36.

15.     FMC further alleged that Summit "ha[s] infringed and continue to infringe the '952 Patent, despite their knowledge of the patent and in reckless disregard for FMC's patent rights" and that Summit "chose to import sulfentrazone which is made using a process covered by one or more claims of the '952 Patent." *Id.*, ¶37.

16.     FMC further alleged that Summit's conduct "has threatened the value of FMC's patent rights because [Summit's] conduct results in FMC's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing sulfentrazone-containing products that are made using the patented processes and methods." *Id.*, ¶38.

17.     FMC further alleged that Summit's conduct "threatens FMC's relationships with its distributors of its Spartan and Authority brand products, as well as FMC's other sulfentrazone-containing products" and that Summit "will derive a competitive advantage over any of FMC's existing and future sales from using FMC's patented technology without paying compensation for such use." *Id.*, ¶40.

18.     On March 4, 2014, FMC filed a parallel complaint in the International Trade Commission against Summit, Summit Holding, and Summit's Chinese supplier, bringing substantially identical allegations of patent infringement and seeking to permanently exclude Summit from importing sulfentrazone made by the allegedly infringing process.

19.     On the same day, FMC filed a motion for a temporary exclusion order seeking to preclude Summit from importing sulfentrazone while the ITC investigation was pending.

20.     On March 6, 2014, notwithstanding its actions in the ITC, FMC also filed a motion for a preliminary injunction in the Original Action.  In this motion, FMC pressed its patent infringement and false advertising claims.  As relief, FMC again sought to enjoin Summit from importing sulfentrazone and making or selling sulfentrazone-containing products and to force Summit to recall any such products already in the marketplace.  Original Action, D.I. 16. FMC further claimed that Summit's alleged patent infringement was causing irreparable harm.

21.     On April 10, 2014, the parties stipulated to a stay of FMC's patent infringement allegations in the Original Action pursuant to 28 U.S.C. § 1659. Original Action, D.I. 52.  The parties did not stay FMC's preliminary injunction motion on its false advertising claims, or its related state law claims.

22.     Following a three-day evidentiary hearing in July 2014 at the ITC —with testimony from multiple experts and fact witnesses—Administrative Law Judge Dee Lord issued an initial determination on August 12, 2014, denying FMC's motion for a temporary exclusion order.

23.     As part of Judge Lord's initial determination, she found that FMC had failed to show a likelihood of success on the issues of both infringement and validity.

24.     Specifically, Judge Lord found that the respondents would "more likely than not . . . be able to prove at trial, by clear and convincing evidence, that claims 25-28 [of the '952 Patent] are invalid as obvious . . . ." Inv. No. 337-TA-914, Initial Determination, Public Version, at 64 (Aug. 28, 2014).

25.     Judge Lord also found that FMC "ha[d] not shown a likelihood of proving literal infringement of claims 25-28" (*id.* at 80), nor had it "shown a likelihood of success on the issue of infringement under the doctrine of equivalents" (*id.* at 83).

26.     The ITC issued an opinion on September 23, 2014, in which it partially modified Judge Lord's reasoning but otherwise affirmed her conclusions—including that FMC failed to show a likelihood of success on the issues of infringement and validity. Inv. No. 337-TA-914, Commission Opinion, Public Version, at 13 (Oct. 1, 2014).

27.     In early November 2014, this Court denied FMC's preliminary injunction motion based on false advertising and granted Summit's motion to dismiss that claim and FMC's related state law claims. Original Action, D.I. 115. After this decision, FMC dismissed its false advertising and related state-law claims with prejudice. Original Action, D.I. 116.

28.     Following a five-day trial on the merits at the ITC in February 2015, Judge Lord ultimately found that "[c]laims 25-28 of the '952 Patent are invalid pursuant to § 102(g)" and that the "accused sulfentrazone active ingredient is made by a process that does not infringe claims 25-28 of the '952 Patent." Inv. No. 337-TA-914, Notice Regarding Initial Determination (Apr. 10, 2015).

29.     Over FMC's objections, the ITC once again affirmed Judge Lord's findings on infringement and validity, declining to review her determination that claims 25-28 of the '952

Patent are both invalid and not infringed. Inv. No. 337-TA-914, Notice of the Commission's Determination (June 8, 2015).

30.     The deadline for FMC to appeal the ITC's affirmance of Judge Lord's initial determination was August 7, 2015; FMC did not appeal.

31.     On August 7, 2015—the same day that the ITC's determination became final—FMC filed a notice in this Court voluntarily dismissing its infringement allegations without prejudice. Original Action, D.I. 121.

32.     Because the other claims in FMC's complaint had already been dismissed *with* prejudice (Original Action, D.I. 116), FMC's notice of voluntary dismissal terminated the Original Action without prejudice.

33.     FMC's dismissal without prejudice gives it the ability to re-file its complaint at any time.

34.     FMC's decision to dismiss its infringement allegations without prejudice—when it has already dismissed other claims in the Original Action with prejudice—demonstrates that FMC does not intend its voluntary dismissal to be the last word on its infringement allegations.

35.     After FMC dismissed its district court complaint without prejudice, Summit's CEO and counsel have asked FMC repeatedly to provide a covenant not to sue or to reopen and dismiss the district court action with prejudice.  These requests occurred in writing and verbally. FMC has repeatedly refused to provide a covenant-not-to-sue, and it stated verbally that it has no intention of doing so.  FMC has also repeatedly refused to dismiss its district court case with prejudice.

36.     Summit continues to import sulfentrazone into the United States and to formulate and sell sulfentrazone-containing products.

37.     As long as FMC maintains the right to renew its infringement allegations, Summit

will be forced to continue importing sulfentrazone and selling sulfentrazone-containing products

under the looming threat of new litigation by FMC.

38.     This looming threat of litigation—coupled with FMC's aggressive patent

enforcement efforts both here and at the ITC—has created an objectively reasonable

apprehension that Summit will face a renewed infringement suit if it continues importing

sulfentrazone made by the allegedly infringing process.

**Count I**
**Declaratory Judgment of Non-Infringement of the '952 Patent**

39.     Paragraphs 1-38 are incorporated by reference.

40.     The process used to manufacture Summit's imported sulfentrazone does not

infringe any claim of the '952 Patent—including, but not limited to, claim 18 (which FMC

accused Summit of infringing in the Original Action) or its dependent claims 25-28 (which FMC

accused Summit of infringing at the ITC).

41.     Accordingly, Summit has not infringed any claim of the '952 Patent—directly,

indirectly, or by actively inducing others to infringe.

42.     Summit's allegations of non-infringement are supported by the ITC's final

determination that the process used by Summit's Chinese supplier to manufacture sulfentrazone

does not infringe claims 25-28 of the '952 Patent.

43.     Because invalid claims cannot be infringed, Summit's allegations of non-

infringement are further supported by the ITC's final determination that claims 25-28 of the '952

Patent are invalid as obvious.

44.     In light of FMC's ability to renew its infringement allegations at any time, its

aggressive enforcement efforts against Summit, and Summit's intention to continue importing

sulfentrazone, an actual and immediate controversy exists between Summit and FMC as to whether Summit is infringing any valid claim of the '952 Patent.

45.     This actual, immediate controversy warrants a declaratory judgment that Summit has not infringed—and is not infringing—any claim of the '952 Patent, including claim 18 and claims 25-28, in order to establish Summit's right to continue importing sulfentrazone and selling sulfentrazone-containing products without the specter of future litigation by FMC.

### Count II
### Declaratory Judgment of Invalidity of the '952 Patent

46.     Paragraphs 1-45 are incorporated by reference.

47.     The claims of the '952 Patent—including claim 18 and claims 25-28—are invalid under at least 35 U.S.C. §§ 102, 103, and 112.

48.     Summit's allegations of invalidity are supported by the ITC's final determination that claims 25-28 of the '952 Patent are invalid as obvious.

49.     In light of FMC's ability to renew its infringement allegations at any time, its aggressive enforcement efforts against Summit, and Summit's intention to continue importing sulfentrazone, an actual and immediate controversy exists between Summit and FMC as to whether any claims of the '952 Patent are valid and enforceable.

50.     This actual, immediate controversy warrants a declaratory judgment that the claims of the '952 Patent are invalid, including claim 18 and claims 25-28, in order to establish Summit's right to continue importing sulfentrazone and selling sulfentrazone-containing products without the specter of future litigation by FMC.

**<u>Prayer for Relief</u>**

WHEREFORE, Summit prays that:

a.  The Court declare that the process used to manufacture Summit's imported

   sulfentrazone does not infringe any valid and enforceable claim of the '952 Patent;

b.  The Court declare that the claims of the '952 Patent are invalid under one or more

   of 35 U.S.C. § 102, 103, and 112;

c.  The Court award Summit its costs in this action; and

d.  The Court award Summit any other relief it deems proper.

OF COUNSEL:
Samuel N. Tiu
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013
(213) 896-6095

Paul Zegger
Michael R. Franzinger
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8600

Dated: October 7, 2015

/s/ Karen E. Keller
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiff Summit Agro USA, LLC*